UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jonathan S., | Civ. No. 26-322 (PAM/DLM) |
| Petitioner, | |
| v. | MEMORANDUM AND ORDER |
| Pamela Jo Bondi, in her official capacity as Attorney General of the United States; Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security; Todd Lyons, in his official capacity as Acting Director of Immigration and Customs Enforcement; and David Easterwood, in his official capacity as Acting Director, St. Paul Field Office, Immigration and Customs Enforcement, | |
| Respondents. | |

This matter is before the Court on Petitioner Jonathan S.'s Petition for Writ of Habeas Corpus. ("Pet." (Docket No. 1).) For the following reasons, the Court denies the petition.

## BACKGROUND

Petitioner Jonathan S. is a citizen of Guatemala. (Id. ¶¶ 1, 15, 27.) He claims to have entered the United States on January 21, 2024, seeking asylum. (Id. ¶ 1.) He applied for an appointment through the CBPOne Application and was granted parole. (Id. ¶ 3.) At that time, he was issued a Notice to Appear and placed in removal proceedings. (Id. ¶¶ 4, 29.) On January 21, 2025, Petitioner filed a Form I-589, Application for Asylum and for

Withholding of Removal, which remains pending. (Id. ¶¶ 1, 5, 30.) In April 2025, Respondents revoked parole for aliens who, like Petitioner, entered using the CBPOne Application. (Id. ¶ 5.) The record does not support that Petitioner has a criminal record. (Id. ¶ 31.) On January 14, 2026, Respondents detained Petitioner, and he remains in their custody. (Id. ¶¶ 3, 32.)

**DISCUSSION**

Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, asking the Court to order his immediate release or grant him an individualized bond hearing under 8 U.S.C. § 1226(a). Respondents contend that his detention is mandatory pending removal proceedings under § 1225(b)(2). The Court must therefore decide whether § 1225(b)(2) or § 1226(a) governs Petitioner's detention.[1]

Relevant here, the Immigration and Nationality Act ("INA") creates a framework that controls the regulation of aliens, including their civil detention pending removal. Before 1996, the INA focused on the alien's physical entry into the country. In 1996, Congress enacted the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), which amended the INA's framework to center on whether an alien has been lawfully admitted. See Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 223 (BIA 2025). Thus, under the new framework, "applicants for admission" defines both aliens at the

---

[1] In the briefing order, the Court directed the parties to the Court's previous decision in Abdirahmaan G. v. Noem, No. 26-CV-34 (PAM/SGE). (Docket No. 3.) Both parties failed to recognize this decision and thus conflated the decisions of other courts in this District with this Court's previous conclusions.

2

border and any alien "present in the United States" without lawful authorization. See 8 U.S.C. § 1225(a). "Now, in removal proceedings, the relevant distinction for procedural purposes is whether the immigrant has been lawfully admitted, regardless of actual physical presence." Torres v. Barr, 976 F.3d 918, 928 (9th Cir. 2020). Put differently, the IIRIRA undid the backwards requirement that aliens who presented at a port of entry had to be detained, while those who entered illegally without trying to prove their basis for admission to the country were not detained.

"When interpreting a statute, [courts] begin with the statute's plain language, giving words the meaning that proper grammar and usage would assign them. If the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." United States v. Lester, 92 F.4th 740, 742 (8th Cir. 2024) (cleaned up). Section 1225(a)(1) dictates that "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . ) shall be deemed for purposes of this chapter an applicant for admission." There is no dispute that Petitioner is an alien present in the United States. See id. And the facts are clear that he did not lawfully enter the United States, i.e., an immigration officer did not inspect him and authorize his entry. Id. § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.").

Section 1225(b)(2)(A) instructs that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a

3

proceeding under section 1229a of this title." The plain reading of the text is that detention is mandatory. Other courts disagree with this reading, making distinctions based on the length of an alien's presence in the United States, an alien's efforts to secure lawful status here, or where an alien was apprehended. Such limitations are not found in the statute. "What governs this case is the text of the statute, not what other district courts have concluded." Mejia Olalde v. Noem, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *1 (E.D. Mo. Nov. 10, 2025).

Petitioner argues that § 1225 applies only to aliens "seeking admission" at the United States' border, and because he has lived in the United States for some time, he is not "seeking admission." Indeed, many courts agree with Petitioner's interpretation of § 1225(b)(2)(A). However, the Court determines that the growing minority of district courts to reject Petitioner's argument are correct. See, e.g., Chavez v. Noem, 801 F. Supp. 3d 1133, 1140 (S.D. Cal. 2025); Lopez v. Ladwig, No. 6:25-CV-01884, 2026 WL 19095, at *4–6 (W.D. La. Jan. 2, 2026); Alberto Rodriguez v. Jeffreys, No. 8:25CV714, 2025 WL 3754411, at *11–14 (D. Neb. Dec. 29, 2025); Melgar v. Bondi, No. 8:25CV555, 2025 WL 3496721, *10–14 (D. Neb. Dec. 5, 2025); Chen v. Almodovar, No. 1:25-CV-8350-MKV, 2025 WL 3484855, *3–6 (S.D.N.Y. Dec. 4, 2025); Mejia Olalde, 2025 WL 3131942, *3–4. The text of § 1225(b)(2)(A) is clear that a noncitizen who is an "applicant for admission" is necessarily "seeking admission." Indeed, the law dictates that an alien's mere presence in the United States without lawful admission means that he or she is seeking admission "by operation of law." Matter of Lemus-Losa, 25 I & N. Dec. 734, 743 n.6 (BIA 2012).

4

Petitioner's attempt to distinguish an "applicant for admission" from an alien "seeking admission" lacks merit. See Vargas Lopez v. Trump, 802 F. Supp. 3d 1132, 1142 (D. Neb. Sept. 30, 2025) (explaining that "just because Vargas Lopez illegally remained in this country for years does not mean that he is suddenly not an 'applicant for admission' under § 1225(b)(2)"). Petitioner fails to provide evidence that he has been lawfully admitted to the United States. "Admission" means lawful entry into the United States, not merely any presence here. 8 U.S.C. § 1101(a)(13)(A). The statute's plain meaning prevails: Petitioner is an "applicant for admission" because he is present in this country and has not been admitted. Respondents may lawfully detain Petitioner under § 1225(b)(2), which requires detention. Petitioner contends that his detention is also improper because Respondents did not have a warrant for his arrest, but "Section 1225(b) does not include a warrant or an arrest requirement." Melgar, 2025 WL 3496721, at *8. Petitioner's argument fails. Thus, as a matter of law, Petitioner is not entitled to a bond hearing.

Moreover, Petitioner filed an application for asylum in January 2025 and continues to pursue that status. "That application seeks to allow him to remain in this country—i.e., to be admitted." Coronado v. Sec'y, Dep't of Homeland Sec., No. 1:25-CV-831, 2025 WL 3628229, at *7 (S.D. Ohio Dec. 15, 2025). Even "[i]f actively 'seeking admission' is a distinct requirement for mandatory detention pursuant to § 1225, seeking asylum is 'seeking admission,' within the meaning of the statute, since 'admission' is defined in terms of 'lawful' status, 8 U.S.C. § 1101(a)(13)(A), not physical presence on U.S. soil." Chen, 2025 WL 3484855, at *6. Indeed, were an applicant not seeking admission to the

5

United States or other lawful status when confronted by an immigration officer, then he or she would voluntarily self-deport.

Petitioner argues that Respondents' previous interpretation of the INA is the better course for the Court to follow. But past practice does not eclipse statutory language. In July 2025, DHS issued a memorandum requiring that all "applicants for admission" be detained under § 1225(b)(2) during removal proceedings, a position that the Board of Immigration Appeals later adopted in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). See Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, Detention of Applicants for Admission (July 10, 2025). Petitioner claims that supports his view, because the Court need not afford weight to the agency's decision given that Loper Bright significantly curtailed judicial deference to administrative actions. See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412–13 (2024). However, Petitioner provides no authority or history to support his argument that the agency's previous pattern was superior, and "[i]f there was a documented prior rationale, the Court has not seen it." Rojas v. Olson, No. 25-CV-1437-BHL, 2025 WL 3033967, at *9 (E.D. Wis. Oct. 30, 2025). Moreover, "it is well established that the Executive Branch has broad discretion to make enforcement decisions in 'the immigration context.'" Chen, 2025 WL 3484855, at *7 (quoting United States v. Texas, 599 U.S. 670, 679 (2023)).

Although Petitioner contends that Jennings supports his view, the better reading of Jennings supports Respondents' argument. The Court determines that Jennings cannot be read so broadly as to mean that aliens who have been in the country for an extended length of time must necessarily fall under § 1226(a). See Jennings v. Rodriguez, 583 U.S. 281,

6

297 (2018). Jennings explains that § 1225(b)(2) is a "catchall provision," applying to all "applicants for admission," including those who unlawfully entered the country and are therefore "deemed" applicants for admission under § 1225(a)(1)'s definition. Id. at 287. As established, Petitioner is an applicant for admission. Neither Petitioner nor Respondents argue that he qualifies for expedited removal under § 1225(b)(1). "So if the Supreme Court's reference to 'all applicants … not covered by § 1225(b)(1)' in fact means what it says, then [Petitioner] necessarily falls under the 'catchall provision.'" Coronado, 2025 WL 3628229, at *9) (quoting Jennings, 583 U.S. at 287). Indeed, "[r]ead most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded." Mejia Olalde, 2025 WL 3131942, at *2 (quoting Jennings, 583 U.S. at 297). Petitioner is not entitled to the relief he seeks.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that:**

1. The Petition (Docket No. 1) is **DENIED**; and

2. This action is **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 5, 2026                    s/ *Paul A. Magnuson*
                                           Paul A. Magnuson
                                           United States District Court Judge